No. 12-35500

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

ESCORT INC. and BELTRONICS USA, INC.
Plaintiffs-Appellants

v.

HOYT A. FLEMING, III and PARK, VAUGHAN, FLEMING & DOWLER LLP
Defendants-Appellees
_____

On Appeal from a Judgment of the
United States District Court for the District of Idaho
Honorable B. Lynn Winmill
Case No.  1:12-cv-00064-BLW

_____

## APPELLANTS' REPLY BRIEF

_____

Gregory F. Ahrens*
Brett A. Schatz*
WOOD, HERRON & EVANS, L.L.P.
441 Vine Street, 2700 Carew Tower
Cincinnati, Ohio  45202-2917
(513) 241-2324

Terry C. Copple
DAVISON COPPLE COPPLE & COPPLE
P.O. Box 1583
Boise, ID 83701
(208) 342-3658

*Counsel of Record

_Counsel for Appellants Escort Inc. and Beltronics USA, Inc._

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES .................................................................................... iii

I.     JURISDICTIONAL STATEMENT ............................................................1

II.    STATEMENT OF THE FACTS ..................................................................3

      A.    Appellees' Statement Of The Facts Concerning The
            District Court's Summary Judgment Order Is Incorrect ....................3

      B.    Appellees' Statement Of The Facts Concerning Their
            False Letters Is Incorrect ................................................................5

      C.    Appellees' Statement Of The Facts Concerning Their False
            Representation Of Escort's Bankruptcy Is Incorrect .........................7

III.    SUMMARY OF ARGUMENT ....................................................................8

IV.    LEGAL ARGUMENT ................................................................................11

      A.    Contemplating A Judicial Proceeding In Good Faith Is A
            Prerequisite For Appellees' Affirmative Defense, And
            Appellees Do Not Dispute The Fact That The District Court
            Required Escort To Anticipate That Defense ...................................11

      B.    The District Court Erred By Applying A State Litigation
            Privilege That Is Preempted By And Contrary to Federal
            Patent Law ......................................................................................17

      C.    The District Court Erred When It Dismissed Escort's Causes
            Of Action Based On Litigation Privilege Because Appellees'
            False And Defamatory Statements Have No Reasonable
            Relation To A Judicial Proceeding Contemplated In
            Good Faith ......................................................................................19

V.     CONCLUSION ..........................................................................................22

i

CERTIFICATE OF COMPLIANCE ..................................................... 23

CERTIFICATE OF SERVICE ............................................................. 24

# <u>TABLE OF AUTHORITIES</u>

Page

**CASES**

*Action Apartment Assoc., Inc. v. City of Santa Monica,*
    41 Cal. 4th 1232, 163 P.3d 89, 63 Cal. Rptr. 3d 398
    (Cal. 2007) ............................................................11, 13

*Blaine Larsen Processing, Inc. v. Hapco Farms, Inc.,* .......................................15
    Case No. 97-212-E-BLW, 1999 U.S. Dist. LEXIS 23520,
    at * 14-15 (D. Idaho June 16, 1999)

*Breed v. Hughes Aircraft Co.* ................................................................1
    253 F.3d 1173 (9th Cir. 2001)

*Christianson v. Colt Indus. Operating Corp.,* .......................................2
    486 U.S. 800, 100 L. Ed. 2d 811, 108 S. Ct. 2166 (1988).

*Edwards v. Centex Real Estate Corp.,*
    53 Cal. App. 4th 15, 61 Cal. Rptr. 2d 518 (1997) ..........................15, 16, 22

*Fuhrman v. California Satellite Sys.,*
    179 Cal. App. 3d 408, 231 Cal. Rptr. 113 (1986) ......................................15

*GP Indus., Inc. v. Eran Indus., Inc.,*
    500 F.3d 1369 (Fed. Cir. 2007) ...........................................................17, 18

*Golan v. Pingel Enterprise, Inc.,*
    310 F.3d 1360 (Fed. Cir. 2002) ..................................................................17

*Gomez v. Toledo,* ................................................................................15
    446 U.S. 635, 64 L. Ed. 572, 100 S. Ct. 1920 (1980)

*Groten v. State of California,*
    251 F.3d 844 (9th Cir. 2001) ......................................................................15

*Hunter Douglas, Inc. v. Harmonic Design, Inc.,*
    153 F.3d 1318 (Fed. Cir. 1998) .............................................................2, 19

*Kirschstein v. Haynes*,
788 P.2d 941 (Ok. 1990) ....................................................................11, 13

*Lans v. Digital Equipment Corp.*, ............................................................4
252 F.3d 1320 (Fed. Cir. 2001)

*Malmin v. Engler*, ...................................................................................14
864 P.2d 179 (Id. Ct. App. 1993)

*McDonald v. United States*,
102 F.3d 1009 (9th Cir. 1996) ..............................................................15

*Mikohn Gaming Corp. v. Acres Gaming, Inc.*,
165 F.3d 891 (Fed. Cir. 1998) ....................................................17, 18, 19

*Nat'l Bank of Canada v. Hale & Dorr LLP*, ...........................................7
17 Mass. L. Rptr. No. 29,681 (MA 2004)

*Richeson v. Kessler*, ................................................................................14
255 P.2d 707, 708 (Idaho 1953)

*Rusheen v. Cohen*,
37 Cal. 4th 1048, 128 P.3d 713, 39 Cal. Rptr. 3d 516
(Cal. 2006) ......................................................................................12, 22

*Sears, Roebuck & Co. v. Stiffel Co.*,
376 U.S. 225, 11 L. Ed. 2d 661, 84 S. Ct. 784 (1964) ...........................19

*Silberg v. Anderson*,
50 Cal. 3d 205, 786 P.2d 365, 266 Cal. Rptr. 638 (Cal. 1990) ...................15

*Taylor v. McNichols*,
245 P.3d 642 (Id. 2010) ..............................................................12, 14, 21

*Zenith Elecs. Corp. v. Exzec, Inc.*,
182 F.3d 1340 (Fed. Cir. 1999) ........................................................17, 18

## STATUTES, REGULATIONS AND RULES

28 U.S.C.

§ 1338 ....................................................................................1
§ 1631 ....................................................................................2

35 U.S.C.

§ 256 .....................................................................................1
§ 271 .....................................................................................6
§ 271(a) .................................................................................7
§ 287 .....................................................................................1

## Other Authorities

*Restatement (Second) of Torts*, § 586 .......................................9, 11, 14

# I.     JURISDICTIONAL STATEMENT

Appellees assert that the Court of Appeals for the Federal Circuit has exclusive appellate jurisdiction over this dispute.  Escort does not agree.  While the District Court's order dismissing this case mentions the patent notice statute, *i.e.*, 35 U.S.C. § 287, and that statute relates to a patent holder's damages for infringement and which appears to be an alleged defense raised by Appellees, that does not mean that Escort's causes of action "aris[e] under any Act of Congress relating to patents" pursuant to 28 U.S.C. § 1338.  Moreover, Escort's Lanham Act claims were before the District Court pursuant to 28 U.S.C. § 1338.  While Escort did not raise those claims in its Opening Brief, those claims were the subject of Escort's Notice of Appeal.  (ER 1-2).

Appellees also refer the Court to *Breed v. Hughes Aircraft Co.*, but that case involved a cause of action brought pursuant to 35 U.S.C. § 256 for correction of inventorship of a patent, and therefore federal patent law created that cause of action.  Precedent has established that such claims arise under an Act of Congress.  *Breed v. Hughes Aircraft Co.*, 253 F.3d 1173, 1176 (9th Cir. 2001).

Moreover, as acknowledged by Appellees, Escort's causes of action are based in part upon Appellees' false statement regarding Escort's purported bankruptcy.  As such, Escort can prevail on its causes of action without resolving a substantial question of federal patent law.  For this reason, Escort's causes of

1

action do not "necessarily depend[] on resolution of a substantial question of federal patent law." *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1328-29 (Fed. Cir. 1998) ("Our scrutiny of the claims pleaded is thorough, for we must ascertain whether all the theories by which a plaintiff could prevail on a claim rely solely on resolving a substantial question of federal patent law."). In so deciding, the Federal Circuit cited Supreme Court precedent that "a claim supported by alternative theories in the complaint may not form the basis for § 1338(a) jurisdiction unless patent law is essential to each of those theories." *Id.*; citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 810, 100 L. Ed. 2d 811, 108 S. Ct. 2166 (1988).

However, for purposes of this dispute, Escort does not object to a transfer of this Appeal to the Federal Circuit. If this Court determines that the Federal Circuit has jurisdiction over this dispute, transfer is appropriate pursuant to 28 U.S.C. § 1631. Specifically, Escort timely filed its Notice of Appeal on June 18, 2012. (ER 1-2). Therefore, Escort's Appeal could have been brought before the Federal Circuit at the time it was filed or noticed, and pursuant to 28 U.S.C. § 1631 "the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred."

2

## II.  STATEMENT OF THE FACTS

### A.  Appellees' Statement Of The Facts Concerning The District Court's Summary Judgment Order Is Incorrect

In their Statement of the Facts, Appellees incorrectly assert that Escort "did everything in its power to ensure the entire [summary judgment order] remained secret." (Appellees' Brief, at 5, 7).  To the contrary, Escort facilitated the preparation of an unredacted version that could be made public, after the District Court originally entered that Order under seal.  (ER 69-126).  After the District Court entered the Order under seal, Fleming's counsel represented that he "intend[ed] to make public the [District] Court's summary judgment order…" without seeking leave of the District Court.  (RER 133-134).[1]  Because the District Court placed its Order under seal, Escort's position was that neither Fleming nor Escort had the right or authority to unilaterally make public what the District Court placed under seal.  *Id.*  Escort then advised Fleming's counsel that "[i]f the [District] Court prefers to unseal its order, and requests the Parties to provide comments regarding that process, [Escort] will do so."  *Id.*  An unsealed version of the Memorandum Decision and Order was issued on January 31, 2012, through the assistance of Escort's counsel and its redacted version thereof.  (ER 69-126).  Appellees concede as much.  (Appellees' Brief, at 7).

---

[1] RER refers to Escort's Reply Excerpts of Record, and continues in numerical order from Escort's original Excerpts of Record.

3

Appellees' recitation of the history behind this issue is not only incorrect, but a red herring. Specifically, Appellees (incorrectly) assert that because Escort was purportedly "concealing the parties' case and the [District] Court's order from the re-sellers," this caused Fleming concern over the patent notice requirement. (Appellees' Brief, at 5, 8). Whether Escort was or was not informing its customers about the case and the District Court's summary judgment order is irrelevant to the patent notice requirement, because notice from Escort cannot, as a matter of law, fulfill the notice requirement. To the contrary, such notice must come from the patent owner. *Lans v. Digital Equipment Corp.*, 252 F.3d 1320, 1327-28 (Fed. Cir. 2001) ("This court thus reiterates that actual notice under § 287(a) 'must be an affirmative act on the part of the patentee which informs the defendant of infringement.'"). It follows that Appellees' historical view of this issue is incorrect, and does not provide a correct explanation for their decision to send the false letters.

It also does not matter whether there was anything "secret" about Appellees' false letters. No element of Escort's claims requires secrecy, because Appellees' statements are false and defamatory regardless. Thus, Appellees' comments on this point do not assist their argument. (Appellees' Brief, at 8).

4

**B.      Appellees' Statement Of The Facts Concerning Their False Letters Is Incorrect**

Appellees also spend many pages of their Statement of the Facts arguing that their letters are not false.  (Appellees' Brief, at 10-13).  Appellees fail to note that the falsity of their letters is not directly at issue on Appeal.  Rather, it is the application of the litigation privilege that is.  This cannot be reasonably disputed because on a motion to dismiss the Court should accept as true Escort's allegations that Appellees published false and defamatory statements to Escort's customers, knowing that those statements were false, and did so in bad faith.  (ER 36-42, at ¶¶ 10-24, 33-40).

Appellees' letters are in fact false, and their purported explanation of them further demonstrates that fact.  In the Summary Judgment Order, there was no determination of liability for infringement of any patents asserted by Fleming in *Fleming I.*  (ER 69-126).  Despite the fact that Escort (and others) who make, use, sell, offer to sell, or import the Passport 9500i, Passport 9500ix, Passport iQ, and GX65 radar detectors may in fact not be liable for patent infringement, Appellees unequivocally misrepresented to Escort's customers and distributors that they were liable.  (ER 57-58).  In doing so, Appellees also mischaracterized the District Court's Order, which does not hold that liability exists for those who make, use, sell, offer to sell, or import the Passport 9500i, Passport 9500ix, Passport iQ, and GX65 radar detectors.

5

In an attempt to further justify their false statements and mischaracterization of the District Court's Order, Appellees suggest they were referring to Sections (b) and (c) of 35 U.S.C. § 271 when they declared that "[a]nyone who makes, uses, sells, offers to sell, or imports the infringing Passport 9500i, Passport 9500ix, Passport iQ, and GX65 radar detectors <u>is liable</u> in damages to Fleming." (Appellees' Brief, at 10). This is not a successful cover-up, because nowhere do Sections (b) and (c) of 35 U.S.C. § 271 discuss "making, using, selling, offering to sell, or importing" allegedly infringing products, which is the vernacular used by Appellees in their letters. (ER 57-58). Making Appellees' cover-up even more incredible is the fact that nowhere in their letters did Appellees suggest that Escort's customers and distributors were liable for inducing or contributing to infringement. *Id.* To the contrary, Appellees unequivocally represented that Escort's customers and distributors were liable for <u>selling</u>, not for inducing or contributing to infringement. *Id.*

Appellees also represent to the Court that Fleming was only informing the recipients that "he believed" they were liable. (Appellees' Brief, at 10). Appellees' representation is incorrect, and the unequivocal nature of Appellees' statements demonstrates this fact. Nowhere in their letters do Appellees state that they are merely expressing their "belief" or "opinion" regarding liability. And, making Appellees' representation quite incredible is the fact that Appellees made

6

sure to equivocate other statements by using the precise language Appellees now claim they used in connection with the liability issue. For example, Appellees stated "[i]n light of the above, <u>we believe</u> Fulfillment Services now has accrual obligations under Generally Accepted Accounting Principles ('GAAP')." (ER 57-58; ER 63-64) (emphasis added). No such language is present with respect to Appellees' representations that Escort's customers are liable. For this same reason, Appellees' reference to Federal Circuit case law regarding direct liability under 35 U.S.C. § 271(a) does not assist their argument.

Appellees then argue that Escort has told others in the past that they "would be liable" for infringement based on *Nat'l Bank of Canada v. Hale & Dorr LLP*, 17 Mass. L. Rptr. No. 29,681 (MA 2004). Appellees' argument fails for several reasons. First and foremost, this "evidence" is extrinsic to Escort's Complaint, and therefore was not appropriate for consideration by the District Court. Second, the quote in Appellees' Brief is taken from the opinion of another court, and is not a communication from Escort. Third, what Escort may have informed prospective purchasers regarding potential liability is irrelevant to the sufficiency of Escort's Complaint or the merits of Appellees' motion to dismiss.

## C.  Appellees' Statement Of The Facts Concerning Their False Representation Of Escort's Bankruptcy Is Incorrect

In their false letters, Appellees also declared that "[n]evertheless, Escort is a small, private company that was purchased in a bankruptcy estate auction in 2005,

and to the extent Escort is unable to pay the full damage award after trial and/or
Fulfillment Services does not immediately cease and desist from selling the
infringing products, Mr. Fleming will have a claim against Fulfillment Services."
*Id*. This is false – Escort was not purchased in a bankruptcy estate auction in 2005.
Indeed, Escort has never filed for bankruptcy. (ER 39-42, at ¶¶ 32, 35-40; ER 52-
54, at ¶¶ 9-15). It is for that reason that its assets were not auctioned off in the
context of bankruptcy.

Appellees attempt to justify their false statements about Escort's purported
bankruptcy also falls well short. Specifically, Appellees claim they understood a
press release from Falconhead Capital as declaring Escort's bankruptcy.
(Appellees' Brief, at 12). With due respect, that is not a defense. And, Appellees
could not possibly have had such an understanding because the press release
simply does not suggest that Escort was in bankruptcy. (SER 57-59).

## III. SUMMARY OF ARGUMENT

Appellees do not dispute that the District Court required Escort to both
anticipate Appellees' affirmative defense of litigation privilege and then plead that
Appellees did not contemplate in good faith a judicial proceeding. Rather,
because that fact is indisputable given the record before the District Court,
Appellees challenge this issue on appeal by arguing (1) there should be no good
faith requirement for pre-litigation conduct for the litigation privilege to apply and

(2) Escort failed to raise the good faith requirement before the District Court and therefore waived that argument.

Appellees' first argument fails to address, and concedes, that jurisdictions adopting a litigation privilege hold that pre-litigation communications are only privileged when related to litigation that is contemplated in good faith and under serious consideration. It also fails to address, and concedes, the nearly universal adoption of the *Restatement (Second) of Torts*, and that § 586 requires good faith for "communications preliminary to a proposed judicial proceeding."

Appellees' second argument is incorrect because the good faith requirement for pre-litigation communications is a necessary element of the affirmative defense of litigation privilege that had to be raised by Appellees, not Escort. Because Appellees failed to raise it, Escort did not have to address it. Therefore, the District Court erred when it required Escort to plead that Appellees did not have good faith in contemplating a judicial proceeding, and when it dismissed Escort's state law causes of action based on litigation privilege.

Appellees also do not dispute that the District Court applied a state litigation privilege that is preempted by federal patent law. Rather, Appellees argue (1) state litigation privilege is not in conflict with federal patent law, and (2) Escort failed to raise the argument that federal patent law applies before the District Court, and therefore waived that argument. Appellees are incorrect. First, state litigation

9

privilege, which provides for immunity regardless of whether a notice of a patent right is false and made in bad faith, is in direct conflict with federal patent law. Federal patent law provides that there is no immunity, and liability, if a notice of patent rights is false and made in bad faith. Second, Escort expressly raised this issue before the District Court and therefore did not waive it. Thus, it was error for the District Court to dismiss Escort's causes of action based on a state litigation privilege.

Finally, Appellees argue that the facts relating to Fleming's first and second lawsuits "map" to the litigation privilege, and that "Escort fails to explain why the facts as pled do not 'map' directly to the litigation privilege." While Escort did not use the "map" vernacular, whatever that may mean, Escort did demonstrate that the District Court did not rule or find that Appellees' false and defamatory statements had any reasonable relation to Fleming's first lawsuit. In addition, Escort demonstrated that Appellees' false and defamatory statements regarding Escort's financial viability have no reasonable relation to a judicial proceeding contemplated in good faith between Fleming and Escort's customers, *i.e.*, Fleming's second lawsuit. Thus, a prerequisite for the application of the litigation privilege is not satisfied. Using Appellees' vernacular, then, the facts do not "map" to the litigation privilege.

10

## IV.   LEGAL ARGUMENT

### A.   Contemplating A Judicial Proceeding In Good Faith Is A Prerequisite For Appellees' Affirmative Defense, And Appellees Do No Dispute The Fact That The District Court Required Escort To Anticipate That Defense

Appellees do not dispute that jurisdictions adopting a litigation privilege hold that a "prelitigation communication is privileged only when it relates to litigation that is contemplated in good faith and under serious consideration." ((ER 14) (emphasis added), citing *Action Apartment Assoc., Inc. v. City of Santa Monica*, 41 Cal. 4th 1232, 163 P.3d 89, 102, 63 Cal. Rptr. 3d 398 (Cal. 2007); *Kirschstein v. Haynes*, 788 P.2d 941, 947-48 (Ok. 1990)).  Appellees also do not dispute that the *Restatement (Second) of Torts* has been nearly universally adopted, and that these jurisdictions have adopted § 586, including Comment *e*, which limits the application of litigation privilege to pre-litigation communications where the party asserting that defense has demonstrated litigation is contemplated in good faith.

Appellees address this undisputed fact by arguing that the Idaho Supreme Court has held that the litigation privilege is "absolute," and therefore provides immunity regardless of whether "good faith" exists.  (Appellees' Brief, at 17). Appellees' argument misses the mark.  Specifically, the fact that a litigation privilege has been held to be absolute only means that, *when it is applicable*, it immunizes all communications, irrespective of good faith.  That Idaho's litigation

11

privilege is "absolute," however, does not mean that litigation privilege, and hence "absolute" immunity, is applicable in all situations.

Making this expressly clear is the *Taylor v. McNichols* case, relied upon by Appellees and considered by the District Court. The District Court correctly determined that for a litigation privilege to apply, a statement must be "related to" the judicial proceeding. (ER 11, citing *Taylor v. McNichols*, 245 P.3d 642, 655 (Id. 2010)). Courts in this Circuit have universally held to this requirement. For example, the California Supreme Court holds that litigation privilege does not apply unless the communication serves "to achieve the objects of the litigation." *Rusheen v. Cohen*, 37 Cal. 4th 1048, 128 P.3d 713, 718, 39 Cal. Rptr. 3d 516 (Cal. 2006). Moreover, the litigation privilege only applies to communications "that have some connection or logical relation to the action." *Id.*

It follows, then, when the litigation privilege applies, it has been held to be absolute. That means that when the litigation privilege applies, it has been held to protect even communications like those at issue here, *i.e.*, communications that are false and made in bad faith. However, here, the litigation privilege does not apply in the first instance because pre-litigation communications are only privileged when they relate to litigation that is contemplated in good faith and under serious consideration. (ER 14: "Many of the jurisdictions adopting the litigation privilege

12

hold that 'prelitigation communication is privileged only when it relates to litigation that is contemplated in good faith and under serious consideration.'").

And, Appellees are not correct when they argue that the "good faith contemplation of litigation" requirement for pre-litigation communications is inconsistent with Idaho's "absolute" privilege for communications made during litigation. Contrary to Appellees' argument, jurisdictions that apply privilege for pre-litigation communications only if litigation is contemplated in good faith and under serious consideration, at the same time provide "absolute" privilege for communications that are not pre-litigation communications. *Action Apartment*, 163 P.3d at 95, 102 (In California, "[t]his privilege is absolute in nature, applying to *all* publications, irrespective of their maliciousness" and also holding that "[a] prelitigation communication is privileged only when it relates to litigation that is contemplated in good faith and under serious consideration.") (emphasis in original); *Kirschstein*, 788 P.2d at 948 ("[The Supreme Court of Oklahoma] has applied an absolute privilege to communications *made during* various proceedings…The situation here does not expressly fall within the statute's protection because the communications involved were all made preliminary to a proposed proceeding the record fails to disclose has ever been instituted…Where there is no indication that an attorney seriously contemplated a judicial proceeding in good faith, but only threatened litigation if the purportedly defamed individual

13

engaged in certain future conduct the absolute privilege would not apply.")
(emphasis in original).

In this regard, Appellees have failed to cite to a single case wherein
litigation privilege is anything other than "absolute" for communications made
during a proceeding, and at the same time not applicable for pre-litigation
communications when litigation is not contemplated in good faith and under
serious consideration. This is entirely consistent with the nearly universally
adopted *Restatement (Second) of Torts*, which provides for "absolute" privilege for
communications that are not pre-litigation communications, and at the same time
requires "good faith contemplation of litigation" for pre-litigation communications.
This is also entirely consistent with the application of Idaho's "absolute" privilege
for communications that are not pre-litigation communications.

This is also consistent with the fact that all of the cases cited by Appellees
involve communications made during litigation. *Taylor v. McNichols*, 243 P.3d
642, 653 (Idaho 2010) (addressing "the propriety of expanding this privilege to
encompass conduct, as well as statements, which occur during the course of
litigation…"); *Richeson v. Kessler*, 255 P.2d 707, 708 (Idaho 1953) (addressing
allegedly defamatory material contained in a letter to the District Judge); *Malmin v.
Engler*, 864 P.2d 179, 181 (Id. Ct. App. 1993) (letter to magistrate was part of a
judicial proceeding and was therefore protected by litigation privilege); *Blaine*

14

*Larsen Processing, Inc. v. Hapco Farms, Inc.*, Case No. 97-212-E-BLW, 1999 U.S. Dist. LEXIS 23520, at * 14-15 (D. Idaho June 16, 1999) (addressing attorney's statements to the press regarding a law suit).

Second, contrary to Appellees' argument, Escort did not waive this argument. As a preliminary matter, Appellees do not dispute that whether they contemplated in good faith a judicial proceeding is an affirmative defense. (Appellees' Brief, at 16-27). Thus, Escort was not required to plead facts that anticipated it. *Fuhrman v. California Satellite Sys.*, 179 Cal. App. 3d 408, 423, 231 Cal. Rptr. 113 (1986)[2]; *see also Edwards v. Centex Real Estate Corp.*, 53 Cal. App. 4th 15, 37, 61 Cal. Rptr. 2d 518 (1997) (litigation privilege is an affirmative defense); *Gomez v. Toledo*, 446 U.S. 635, 640, 64 L. Ed. 572, 100 S. Ct. 1920 (1980) ("Since qualified immunity is a defense the burden of pleading it rests with the defendant."); *Groten v. State of California*, 251 F.3d 844, 851 (9th Cir. 2001) ("Qualified immunity is an affirmative defense that must be raised by a defendant."). This Court has also determined that the burden of proving affirmative defenses lies with the party raising them. *McDonald v. United States*, 102 F.3d 1009, 1010 (9th Cir. 1996) ("We disagree with *Davidson* and hold that

---

[2] *Fuhrman v. California Satellite Sys.* was subsequently disapproved on another ground, *i.e.*, its requirement that for litigation privilege to apply, the statements also had to be in "the interest of justice." *Silberg v. Anderson*, 50 Cal. 3d 205, 786 P.2d 365, 374, 266 Cal. Rptr. 638 (Cal. 1990).

15

placement of the onus on the plaintiffs was error. Good faith is an affirmative defense which the government must prove.").

Here, Appellees never argued that they contemplated in good faith *Fleming II*. (SER 23-43). That issue is altogether absent from Appellees' arguments before the District Court. *Id.* Appellees also did not present any evidence suggesting they contemplated in good faith *Fleming II*. *Id.* Indeed, the facts suggest otherwise. *Fleming II* was filed the next business day after Escort filed this lawsuit, and the next day after Fleming was served. (*See* ER 21; ER 129, Dkt. No. 1). The timing of *Fleming II* suggests that it was filed in response to the complaint filed by Escort in this lawsuit, and was not contemplated in good faith at the time Appellees published their false and defamatory statements. And, Appellees do not mention or dispute the coordinated timing of Appellees' false and defamatory statements and pressuring Escort about reengaging the settlement process. (*See* Escort's Opening Brief, at 7-8). These facts suggest improper, and non-privileged, negotiating tactics. *Edwards*, 53 Cal. App. 4th at 35 (litigation privilege does not attach "if the threat is merely a negotiating tactic and not a serious proposal made in good faith contemplation of going to court.").

Thus, Escort was not required to anticipate Appellees' defenses, and Appellees never argued that they contemplated in good faith *Fleming II*. Appellees therefore never raised this as a defense, and the District Court erred when it

required Escort to both anticipate it and then plead that Appellees did not

contemplate in good faith *Fleming II*.

**B.    The District Court Erred By Applying A State Litigation Privilege That Is Preempted By And Contrary To Federal Patent Law**

Appellees' sole arguments are that (1) the state litigation privilege applied

by the District Court is not in conflict with federal patent law, and (2) Escort failed

to raise the argument that federal patent law applies before the District Court, and

therefore waived that argument.  Both of Appellees' arguments are incorrect.

First, state litigation privilege, which provides for immunity regardless of

whether a notice of a patent right is false and made in bad faith, is in direct conflict

with federal patent law.  Federal patent law provides that there is no immunity, and

liability, if a notice of patent rights is false and made in bad faith.  *Golan v. Pingel*

*Enterprise, Inc.*, 310 F.3d 1360, 1370 (Fed. Cir. 2002) (if a party presents evidence

that statements regarding patent rights were made in bad faith, the statements are

actionable); *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1353 (Fed. Cir.

1999) (a patent owner's statements regarding patent rights are actionable if made

in bad faith); *GP Indus., Inc. v. Eran Indus., Inc.*, 500 F.3d 1369, 1374 (Fed. Cir.

2007).

Moreover, federal patent law governs and provides the standard to apply in

connection with determining liability for notices of one's patent rights.  *Golan*, 310

F.3d at 1370 ("In *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, this court

17

articulated a federal standard applicable to all torts, state or federal, based on a patentee's statements…"); *GP Indus.*, 500 F.3d at 1374 ("Federal patent law governs the propriety of giving such notice…"); *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 896 (Fed. Cir. 1998) ("However, whether Acres' communications were legally justified raises considerations of federal law governing the giving of notice of patent rights.  To the extent that conflict arises in the interaction between state commercial law and federal patent law, federal patent law must be applied…The propriety of that notice depends on patent law and the patent issues to which the notice pertains.").  In *Mikohn Gaming*, the Federal Circuit also held that the propriety of a notice of patent rights "is not a matter of state tort law." *Id.*

Put simply, federal patent law provides in no uncertain terms that a patent owner's statements regarding patent rights may not be made in bad faith.  And, as described above, the Federal Circuit has consistently explained that the reason is "because bad faith marketplace statements concerning patents do not further the purposes of the patent law." *Zenith*, 182 F.3d at 1354.  Idaho's state litigation privilege, if applied here, would provide that an owner's statements regarding patent rights, made in bad faith, are immune and that no liability could attach.  Thus, application of state litigation privilege weakens federal patent law.  It provides immunity in situations where federal patent law provides liability.  It also

18

is directly contrary to, and effectively eviscerates, the federal patent policy of requiring patentees to put alleged infringers on notice of patent rights in good faith, and free of false statements. *Mikohn Gaming*, 165 F.3d at 896-97 (a threshold showing of incorrectness or falsity, or disregard for either, demonstrates bad faith in the communication of patent rights). For these reasons, state litigation privilege impermissibly clashes with federal patent law. *Hunter Douglas*, 153 F.3d at 1335 ("state unfair competition law cannot be applied to 'give protection of a kind that clashes with the objectives of the federal patent laws.'") (citing *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 231, 11 L. Ed. 2d 661, 84 S. Ct. 784 (1964)).

Second, Escort raised the argument that federal patent law governs before the District Court. (SER 2, 15; RER 141). Escort expressly argued that federal patent law applies to false and inaccurate statements made in infringement notices sent by a patent owner. *Id.* Thus, Escort did not waive this argument.

### C. The District Court Erred When It Dismissed Escort's Causes Of Action Based On Litigation Privilege Because Appellees' False And Defamatory Statements Have No Reasonable Relation To A Judicial Proceeding Contemplated In Good Faith

Escort respectfully submits that Appellees' false letters regarding Escort's purported financially inability to pay the damage award in *Fleming I* were a ruse designed to pressure Escort into a settlement. The fact that Appellees do not dispute the background of their false statements is telling.

19

Specifically, Appellees do not dispute that, on February 2, 2012, Magistrate Judge Bush presided over a settlement conference between Fleming and Escort in *Fleming I*.  The settlement conference did not result in a settlement.  (*See Fleming I*, Dkt. No. 177).  Within days of the failed settlement conference and on February 6, 2012, Appellees mailed their false and defamatory statements to Escort's customers.  (ER 57-58; ER 63-64).  Escort understood that its customers received Appellees' false and defamatory statements on February 8, 2012.  (ER 52, at ¶¶ 7-10).  Not by coincidence, also on February 8, Appellee Park Vaughan notified counsel for Escort that it had mailed letters to Escort's customers and pressured Escort about reengaging in the settlement process.  (ER 62).  None of these facts are disputed.

Appellees also do not mention and therefore concede that Escort has fully funded an escrow account that covers the entire amount of the judgment in *Fleming I*.  (*See Fleming I*, Dkt. No. 337; Dkt. 352, at 7).  Moreover, Escort does not have the ability to unilaterally draw upon that escrow.  (Dkt. No. 336, at 6).

As they must, Appellees also concede that in *Fleming II*, the District Court determined that Escort's customers are not liable for patent infringement for reselling or offering to sell the products involved in *Fleming I*.  *Id.*  The District Court determined that "[i]n essence, Escort has a paid-up license…To the degree that Counts One and Two seek recovery from the Customer Defendants for

20

reselling the same four Escort devices, the claims seek a double recovery that cannot be allowed." (*See Fleming II*, Dkt. No. 61, at 7-8).

The fully-funded escrow, in addition to the lower court's dismissal of Counts One and Two in *Fleming II*, ensures no liability for patent infringement on the part of Escort's customers. (*See Fleming II*, Dkt. No. 61, at 8). Fleming will therefore be compensated for any amount due him through the fully-funded escrow and regardless of Escort's financial viability.

Finally, Appellees suggest that Escort conceded that the false statements are related to *Fleming I*. This argument is irrelevant because the District Court did not find Appellees' false statements were related to *Fleming I*. (ER 11). In any event, Appellees' argument, which is based on Escort's Complaint, is incorrect. Specifically, Appellees argue that Escort averred that Appellees' false and defamatory statements were made in bad faith, to gain an illegal and unfair advantage in the marketplace and in connection with *Fleming I*. (Appellees' Brief, at ER 43, at ¶¶ 45-46). From that averment, Appellees incorrectly claim that Escort admitted the false and defamatory statements are related to *Fleming I*.

That Appellees made false and defamatory statements to gain an illegal and unfair advantage in that lawsuit necessarily means that the statements were made illegally and unfairly. It follows that the statements are not "related to" the judicial proceeding and do not serve "to achieve the objects of the litigation." *Taylor*, 245

21

P.3d at 655; *Rusheen*, 128 P.3d at 718. Otherwise stated, Escort did not concede that the false statements are related to *Fleming I*; rather Escort averred that the false statements were made to obtain an unfair advantage in *Fleming I* through sharp settlement tactics that, as a matter of law, are impermissible. *Edwards*, 53 Cal. App. 4th at 35 (litigation privilege does not attach "if the threat is merely a negotiating tactic and not a serious proposal made in good faith contemplation of going to court.").

## V.    CONCLUSION

Escort respectfully requests that this Court reverse the judgment of the District Court dismissing Escort's causes of action based on litigation privilege.

October 28, 2013                    Respectfully submitted,

s/ Brett A. Schatz
Gregory F. Ahrens*
Brett A. Schatz*
WOOD, HERRON & EVANS, L.L.P.
441 Vine Street, 2700 Carew Tower
Cincinnati, Ohio  45202-2917
(513) 241-2324

Terry C. Copple
DAVISON COPPLE COPPLE & COPPLE
P.O. Box 1583
Boise, ID 83701
(208) 342-3658

*Counsel of Record

22

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify, pursuant to Fed. R. App. Proc. 32(a)(7)(C) and Circuit Rule 32-1, that the foregoing Appellants' Opening Brief complies with the type-volume limitation set forth in Rule 32(a)(7).  The foregoing brief (excluding the corporate disclosure statement, request for oral argument, table of contents and index of authorities, but including footnotes) contains 5,073 words.  In preparing this certificate, I relied on the word count generated by Microsoft Word.


October 28, 2013                        s/ Brett A. Schatz
                                        Brett A. Schatz

23

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on October 28, 2013.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


s/ Brett A. Schatz
Gregory F. Ahrens
Brett A. Schatz
WOOD, HERRON & EVANS, L.L.P.
441 Vine Street, 2700 Carew Tower
Cincinnati, Ohio  45202-2917
(513) 241-2324