No. 12-35500

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

ESCORT, INC. and BELTRONICS USA, INC.
Plaintiffs-Appellants

v.

HOYT A. FLEMNG III and PARK, VAUGHAN, FLEMING & DOWLER, LLP
Defendants-Appellees

On Appeal from a Judgment of the
United States District Court for the District of Idaho
Honorable B. Lynn Winmill
Case No. 1:12-cv-00064-BLW

**APPELLEES' OPENING BRIEF**

Michael S. Dowler
Park Vaughan Fleming & Dowler, LLP
5847 San Felipe, Suite 1700
Houston, TX 77057
(713) 821-1540

Counsel for Appellees Hoyt A. Fleming III
and Park, Vaughan, Fleming & Dowler,
LLP

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Appellees Hoyt A. Fleming III and Park, Vaughan, Fleming & Dowler, LLP state that neither is a nongovernmental corporate party. Therefore, neither appellee has a parent corporation, nor does any publicly held corporation own 10% or more of their stock.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT……………………………………ii

I.  JURISDICTIONAL STATEMENT ..................................................... 1

II.  STATEMENT OF THE ISSUES ...................................................... 4

III.  STATEMENT OF THE CASE ......................................................... 5

IV.  STATEMENT OF THE FACTS ....................................................... 7

    A.  THE FIRST FLEMING V. ESCORT CASE .................................... 7

    B.  THE (PRESENT) ESCORT V. FLEMING CASE............................. 10

    C.  THE SECOND FLEMING V. ESCORT CASE ................................. 14

V.  SUMMARY OF THE ARGUMENT ................................................. 14

VI.  ARGUMENT ............................................................................. 15

    A.  THE APPLICABLE STANDARD OF REVIEW .............................. 15

    B.  LEGAL BACKGROUND REGARDING FED. R. CIV. P. 12(B)(6).............. 15

    C.  LEGAL BACKGROUND REGARDING THE IDAHO LITIGATION
        PRIVILEGE .......................................................................... 16

    D.  ESCORT'S COMPLAINT MAPS DIRECTLY TO THE IDAHO
        LITIGATION PRIVILEGE ....................................................... 18

    E.  ESCORT'S NEW ARGUMENTS MISS THE POINT BY
        ERRING FACTUALLY, LOGICALLY, AND LEGALLY .............. 19

        1.  Escort Fails to Explain Why the Facts as Pled Do Not
            Map Directly to the Litigation Privilege ................................. 20

        2.  Escort's Argument that its Complaint Need Not
            Anticipate the Idaho Litigation Privilege Errs Legally,

Factually, and Logically........................................................... 20

    3.    Escort's Argument that Federal Patent Law Preempts
the Idaho Litigation Privilege Errs as a Matter of Law .......... 27

    4.    Escort's Argument that the Notice of Infringement Letter
is Not Related to the Parties' Litigations is Specious.............. 29

VII.   CONCLUSION ............................................................................. 30

CERTIFICATE OF COMPLIANCE……………………………………...31

CERTIFICATE OF SERVICE……………………………………………32

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Al-Site Corp. v. VSI Int'l, Inc.,*
174 F.3d 1308 (Fed. Cir. 1999) ..................................................... 11

*Aronson v. Kinsella,*
58 Cal. App. 4th 254, 68 Cal. Rptr. 2d 305 (1997) ...................................... 23

*Ashcroft v. Iqbal,*
129 S.Ct. 1937 (2009) ................................................... 15

*Bd. of Regents v. Nippon Tel. & Tel. Corp.,*
414 F.3d 1358 (Fed. Cir. 2005) .................................................. 3

*Blaine Larsen Processing, Inc. v. Hapco Farms, Inc.,*
1999 U.S. Dist. LEXIS 23520 (D. Idaho June 16, 1999)……………..18, 26

*Breed v. Hughes Aircraft Co.,*
253 F.3d 1173 (9th Cir. 2001) ................................................. 3

*Dodd v. Hood River County,*
59 F.3d 852 (9th Cir. 1995) ...................................... 15, 21, 27, 29

*Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH,*
524 F.3d 1254 (Fed. Cir. 2008) ............................................... 3, 4

*Dumas v. Kipp,*
90 F.3d 386 (9th Cir. 1996) ................................................ 15

*Globetrotter Software, Inc. v. Elan Computer Group, Inc.,*
    362 F.3d 1367 (Fed. Cir. 2004) ........................................................ 4

*Golden Bridge Tech., Inc. v. Nokia, Inc.,*
    527 F.3d 1318 (Fed. Cir. 2008) ................................... 15, 21, 27, 29

*GP Indus., Inc. v. Eran Indus., Inc.,*
    500 F.3d 1369 (Fed. Cir. 2007) ........................................................ 4

*Heinz Kettler GMBH & Co. v. Indian Indus., Inc.,*
    575 F.Supp.2d 728 (E.D. Va. 2008) ............................................... 8

*Hunter Douglas, Inc. v. Harmonic Design, Inc.,*
    153 F.3d 1318 (Fed. Cir. 1998) ..................................................... 27

*Malmin v. Engler,*
    864 P.2d 179 (Idaho Ct. App. 1993) ................................... 20, 22, 24

*Mikohn Gaming Corp. v. Acres Gaming, Inc.,*
    165 F.3d 891 (Fed. Cir. 1998) ................................................... 3, 27

*National Bank of Canada v. Hale & Dorr, LLP,*
    17 Mass.L.Rptr. No. 29, 681 at 682 (MA 2004) .......................... 11

*Polich v. Burlington Northern, Inc.,*
    942 F.2d 1467 (9th Cir. 1991) ...................................................... 15

*Rainier's Dairies v. Raritan Valley Farms,*
    19 N.J. 552, 117 A.2d 889 (1955) ................................................ 18

*Richeson v. Kessler,*
255 P.2d 707 (Idaho 1953) ................................................................. 20, 22, 24

*Shockley v. Excalibur Tool & Equip. Co., Inc. v. Arcan, Inc.,*
248 F.3d 1349 (Fed. Cir. 2001) ................................................................ 8, 11

*Taylor v. McNichols,*
243 P.3d 642 (Idaho 2010) ................................................................... passim

*Virtue v. Creamery Package Mfg. Co.,*
227 U.S. 8 (1913) ................................................................................... 8, 16

*Waterloov Gutter Protection v. Absolute Gutter,*
64 F.Supp.2d 398 (D. N.J. 2009) ............................................................... 28

*Weisbuch v. County of L.A.,*
119 F.3d 778 (9th Cir. 1997) ..................................................................... 16

*Whittaker Corp. v. Execuair Corp.,*
953 F.2d 510 (9th Cir. 1992) ................................................... 15, 21, 27, 29

## Statutes

28 U.S.C. § 1295 ................................................................................. 1, 2, 26

28 U.S.C. § 1338 ................................................................................. 1, 2, 26

35 U.S.C. § 1 *et seq.* ................................................................................. 1

35 U.S.C. § 271 ....................................................................................... 8, 11

35 U.S.C. §§ 284 ........................................................................................ 8

35 U.S.C. § 287 ..................................................................................... 1, 8

# I.   JURISDICTIONAL STATEMENT

This Court lacks jurisdiction to hear this appeal because the District Court's jurisdiction was based at least in part on 28 U.S.C. § 1338, and the Court of Appeals for the Federal Circuit, pursuant to 28 U.S.C. § 1295, has exclusive jurisdiction over all such appeals.  Appellants Escort, Inc. and Beltronics USA, Inc. (collectively "Escort") have admitted as much.  Moreover, both this Court and the Federal Circuit have held that the Federal Circuit has exclusive appellate jurisdiction in these circumstances.

The jurisdictional facts are not in dispute.  Escort sued Appellees Mr. Fleming and his counsel Park, Vaughan, Fleming & Dowler, LLP ("PVFD") based on a letter PVFD sent notifying one of Escort's customers that it was infringing Mr. Fleming's patents.  (ER 5-7, 35-50.)  As a result, both Escort and the District Court recognized that Escort's causes of action arose under the patent laws of the United States (35 U.S.C. § 1 *et seq*.).  For example, the District Court's order dismissing the case explains:

> After Fleming received a summary judgment decision in *Fleming I* that Escort infringed one of his patents, he had his attorney Dowler send a letter to retailers of Escort's product, putting them on notice that their sales were infringing and demanding that they cease selling those products.  By statute, notice to infringers is an important factor in determining the patent holder's damages for infringement.  *See* <u>35 U.S.C. § 287</u>.

(ER 5-6 (emphasis original).)

Escort likewise admits that its claims arise at least in part under the U.S. patent laws when averring in its complaint that the District Court's subject matter jurisdiction was conferred pursuant to 35 U.S.C. § 1338, which states "[t]he district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents… ." (ER 35, Complaint at ¶ 6 ("Federal jurisdiction is conferred pursuant to 28 U.S.C. §§ 1331, 1332, **1338**, and 1367." (emphasis added).) Escort made the same admission in its Opening Brief to this Court when stating "[t]he District Court had subject matter jurisdiction over the counts that are the subject of the present appeal under 28 U.S.C. §§ 1331, 1332, **1338**, and 1367." (Opening Br. at p. 1 (emphasis added); *see also id.* at pp. 12-13 ("Escort's causes of action are based on Defendants-Appellees' violation of federal patent law governing notice of a patent owner's patent rights."); *id.* at pp. 22-23 (same).)

Where (as in this case) a district court's subject matter jurisdiction is based, in whole or in part, on 28 U.S.C. § 1338, the Federal Circuit has exclusive appellate jurisdiction over that case. 28 U.S.C. § 1295(a)(1) ("The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction—(1) of an appeal from a final decision of a district court… if the jurisdiction of that court was based in whole or in part, on section 1338 of this title… .").

Both this Court and the Federal Circuit have strictly followed the mandate of 28 U.S.C. § 1295(a)(1) in holding that appeals like this one belong only at the

Federal Circuit. In *Breed v. Hughes Aircraft Co.,* this Court held that "[w]e do not reach the merits, however; because the district court's jurisdiction was based in part on § 1338, the Federal Circuit has exclusive jurisdiction over this case." 253 F.3d 1173, 1176 (9th Cir. 2001). In *Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH,* both this Court and the Federal Circuit decided that jurisdiction in a factually identical case (*i.e.,* one involving claims arising from a patentee's notice of infringement letter) was at the Federal Circuit, not the Ninth Circuit. 524 F.3d 1254 (Fed. Cir. 2008). Specifically, the Federal Circuit noted and then held:

> Shortly before oral argument in the Ninth Circuit, that court asked the parties to consider whether Dominant's appeal might lie more properly in this Court. The Ninth Circuit then granted a joint motion by the parties to transfer the appeal to this Court. *Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH,* No. 05-16400 (9th Cir. Jul. 5, 2007). We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1), "which enables this court to hear appeals from a district court 'if the jurisdiction of that court was based, in whole or in part, on [28 U.S.C. § 1338 ].'" *Bd. of Regents v. Nippon Tel. & Tel. Corp.,* 414 F.3d 1358, 1361 (Fed. Cir. 2005) (citing 28 U.S.C. § 1295(a)(1)). Jurisdiction under section 1338(a) extends to cases "'...in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims.'" [Citations omitted.] <u>Because Dominant's claims arise out of OSRAM's communication of its patent rights, patent law is a necessary element of Dominant's claims. The district court thus had jurisdiction based in part on section 1338.</u>

*Id*. at 1259 (emphasis added). *See also, Mikohn Gaming Corp. v. Acres Gaming, Inc.,* 165 F.3d 891, 896-898 (Fed. Cir. 1998) (Federal Circuit, not Ninth Circuit,

precedent applies when the cause of action arises from a patentee's notice of infringement letter); *Globetrotter Software, Inc. v. Elan Computer Group, Inc.,* 362 F.3d 1367, 1374-75 (Fed. Cir. 2004); *GP Indus., Inc. v. Eran Indus., Inc.,* 500 F.3d 1369, 1373-75 (Fed. Cir. 2007). Accordingly, this appeal must be dismissed for lack of jurisdiction pursuant to Circuit Rule 3-6.

## II.   STATEMENT OF THE ISSUES

1.   Does this Court have appellate jurisdiction to hear this case when the District Court's jurisdiction was based in part on 28 U.S.C. § 1338?

2.   Should this Court hear any of Appellants' arguments when none of their arguments were presented to, much less ruled upon by, the District Court?

3.   Did the District Court correctly dismiss all of Escort's Idaho state law causes of action under the Idaho litigation privilege in circumstances where Escort admits that Mr. Fleming's notice of infringement letter was sent in connection with on-going litigation between the parties?

4.   Can and, if so, should this Court change the Idaho litigation privilege—as established by the Idaho Supreme Court—to now require that pre-litigation communications are privileged only when they "relate to litigation that is contemplated in good faith and under serious consideration"?

## III.   STATEMENT OF THE CASE

Mr. Fleming and Escort have been in litigation since 2009 when Mr. Fleming first sued Escort for patent infringement.  (ER 5; SER 24, 191-196.)  In the parties' first case, the Court granted summary judgment that Escort's products infringed one of Mr. Fleming's patents.  (ER 5; SER 24, 124-181.)  The Court sealed its summary judgment order over concerns it might contain Escort's confidential information.  (SER 24, 189.)  Escort subsequently acknowledged that the order contained very little of its confidential information, and yet it did everything in its power to ensure the entire order remained secret.  (SER 24, 47-48.)  This led Mr. Fleming to believe for the first time that Escort was concealing the parties' case and the Court's order from the re-sellers of its adjudged-infringing products.  (SER 24, 47, 64-65.)  This was a concern to Mr. Fleming because 35 U.S.C. § 287 of the Patent Statute requires that patentees put infringers on notice of their infringement.  (ER 5-6; SER 24.)  Since a re-seller of an infringing product is as liable for infringement as an original seller, Mr. Fleming instructed his counsel to send a letter to Escort's resellers notifying them of Mr. Fleming's patent rights and the District Court's summary judgment order.  (ER 5-7, 14; SER 25, 49-51, 64-65.)

Escort then sued Mr. Fleming and his counsel (PVFD) in the Federal District of Idaho for sending the letter.  (ER 33-50.)  Mr. Fleming responded by filing a

motion to dismiss all of Escort's state law causes of action on the basis that he and his counsel were immune from state tort liability under the Idaho litigation privilege. (SER 23-43.) As the Idaho Supreme Court stated when reviewing (and upholding) the historical nature of the privilege:

> This privilege is predicated on the long-established principle that the efficient pursuit of justice requires that attorneys and litigants must be permitted to speak and write freely in the course of litigation without the fear of reprisal through a civil suit for defamation or libel.

*Taylor v. McNichols,* 149 Idaho 826, 243 P.3d 642, 652 (Idaho 2010) (affirming dismissal of all claims under Idaho Rule 12(b)(6)). Against this backdrop, *Taylor* identified the parameters of the Idaho litigation privilege:

> Therefore, this Court holds that, as a general rule, where an attorney is sued by the current or former adversary of his client, as a result of actions or communications that the attorney has taken or made in the course of his representation of his client in the course of litigation, the action is presumed to be barred by the litigation privilege.

*Id*. at 657; *see also id.* at 653.

The District Court compared the elements of this privilege to the averments in Escort's complaint and found the alleged facts aligned perfectly with the privilege. (ER 5-20.) The District Court also considered every argument Escort made and distinguished each one on multiple grounds. (*Id*.) Accordingly, the District Court dismissed all of Escort's Idaho state law claims. (*Id*. at 10-15.) The Court also dismissed all of Escort's federal causes of action because Escort's complaint did not plausibly allege the elements of its federal claims. (*Id*. at 15-20.)

However, Escort has not appealed the dismissal of its federal causes of action, so they are not further addressed here.  (Escort Opening Br. at p. 2.)

## IV.  STATEMENT OF THE FACTS

### A.  The First Fleming v. Escort Case

Mr. Fleming is an inventor and resident of Boise, Idaho who sued Escort and Beltronics (collectively "Escort") in Boise on March 10, 2009 for infringing two of his patents.  (ER 5; SER 24, 191-196.)  On December 14, 2011, the Court ruled on summary judgment that certain Escort products infringe one of those patents.  (ER 5; SER 24, 124-181.)  The Court sealed its order over concerns it might contain party confidential information.  (SER 24, 189.)  Escort doggedly resisted Mr. Fleming's efforts to have the order redacted and unsealed, which forced Mr. Fleming to request resolution by the District Court.  (SER 24, 46-48, 189.)  On January 19, 2012, the District Court ordered expedited briefing on the issue.  (SER 24, 189.)  Escort responded by relenting and finally providing Mr. Fleming a redacted version of the Court's order, which the District Court published on January 31, 2012. (SER 24, 124-181, 182-183.)

Due to Escort's persistent attempts to keep the District Court's order out of the public domain, Mr. Fleming began to believe for the first time that Escort may have concealed the parties' case and the District Court's summary judgment order from the various re-sellers of Escort's infringing products.  (SER 24, 47, 64-65.)

7

This raised a critical issue for Mr. Fleming. Specifically, anyone who sells the infringing Escort products is liable to Mr. Fleming as an infringer. (35 U.S.C. § 271(a) ("*whoever* without authority…sells any patented invention … infringes the patent.") (emphasis added)). *Heinz Kettler GMBH & Co. v. Indian Indus., Inc.,* 575 F.Supp.2d 728, 731 (E.D. Va. 2008); *Shockley v. Excalibur Tool & Equip. Co., Inc. v. Arcan, Inc.,* 248 F.3d 1349, 1364 (Fed. Cir. 2001). (ER 5-6; SER 24.)

In order for Mr. Fleming to collect damages, including enhanced damages, for that infringement, the law requires those infringers be put on notice of Mr. Fleming's patent rights and their infringement. 35 U.S.C. §§ 284, 287; *see also, Virtue v. Creamery Package Mfg. Co.,* 227 U.S. 8, 37-38 (1913) ("Patents would be of little value if infringers of them could not be notified of the consequences of infringement, or proceeded against in the courts.") (ER 5-6; SER 24-25.) Accordingly, on February 6, 2012—three business days after the District Court made its summary judgment order public—Mr. Fleming (though instructions to his retained counsel, PFVD) notified all the infringers he was aware of about the District Court's order, including attaching a copy of the redacted order to his letter. (ER 5-6; SER 25, 49-51.) There was nothing secret about Mr. Fleming's communication; indeed, Mr. Fleming wrote to Escort on February 8, 2012 telling it about the letter, why Mr. Fleming sent it, and the Federal Circuit authority authorizing him to do so. (SER 25, 52-53.)

The result of Mr. Fleming's February 6 letter was twofold. First, the responses Mr. Fleming received confirmed Mr. Fleming's concern that Escort had been concealing the case and its infringement from the re-sellers of its infringing products. One recipient commented:

> I am in-house counsel for Fry's Electronics, Inc. and was forwarded your cease-and-desist letter addressed to our Executive Vice President, Kathy Kolder regarding Mr. Fleming's action against Escort, Inc. et al. Thank you also for providing the Court's ruling on the Motion for Summary Judgment from the Idaho action. It was the first we had heard of an action against Escort for sale of the Passport products. Fry's takes these matters seriously, and we appreciate your bringing it to our attention.

(SER 25, 54-56.) Second, Escort became angry that its long-kept secret had been revealed. Accordingly, four days later on February 10, 2012, Escort retaliated by filing the present suit against Mr. Fleming and PVFD. (ER 6, 33-50; SER 25.)

The first Fleming v. Escort lawsuit ended after a three week trial in which the jury found both of Mr. Fleming's patents valid, infringed, and ordered Escort to pay Mr. Fleming $750,000 in damages. (SER 113-123.) The District Court denied all of Escort's post trial motions (including one to seal portions of the trial transcript), ordered Escort to escrow the jury award due to Escort's "precarious financial situation", and still is considering certain of Mr. Fleming's other motions. (SER 105-112.)

## B.     The (Present) Escort v. Fleming Case

Escort's present lawsuit accuses Mr. Fleming and PVFD of a litany of alleged violations of Idaho state and common law.  (ER 33-50.)  Every cause of action in Escort's lawsuit is premised on two aspects of Mr. Fleming's February 6, 2012 letter.  (ER 6, 33-50.)  Escort first complains that Mr. Fleming should not have told the letter recipients he believed they were "liable" for patent infringement if they re-sold the adjudged infringing Escort products.  (ER 33-50.) Escort has never explained why use of the term "liable" is inappropriate or how it could possibly have suffered any damages there-from, other than to infer that it had unspecified defenses left to be tried during trial of the parties' first case.  (SER 26.)

Mr. Fleming's now-disputed letter expressly cited to and used the exact same "liable" language found in the Patent Statute, which provides in part:

> (a) Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States, or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.
>
> (b) Whoever actively induces infringement of a patent shall be ***liable as an infringer***.
>
> (c) Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial

noninfringing use, shall be ***liable as a contributory infringer***.

(*Compare* SER 49-51 and 35 U.S.C. § 271; *see also, Shockley,* 248 F.3d at 1364

(Fed. Cir. 2001) ("To be ***liable*** for infringement under 35 U.S.C. § 271, a party

must make, use, offer to sell, or sell within the United States…the patented

invention.") (emphasis added); *Al-Site Corp. v. VSI Int'l, Inc.,* 174 F.3d 1308, 1331

(Fed. Cir. 1999) ("[35 U.S.C. § 271(a)] authorizes a finding that an officer of a

corporation is personally ***liable*** for the corporation's acts of infringement.")

(emphasis added). (SER 26-27.)

Notably, the "liable" language Mr. Fleming used is also the exact same

"liable" language Escort has used in the same context. (SER 27.) Specifically,

Escort was a plaintiff/patentee in a 1996 patent infringement case against Whistler

Corp., which the court referred to as "the CMI Litigation". (*Id*.) When Whistler

declared bankruptcy during the pendency of that case, Escort told potential

purchasers of Whistler's assets of the existence of the CMI Litigation and that they

"would be liable" for infringement if they purchased Whistler's assets.

> Escort, Inc., the owner of the patent at issue as well as a plaintiff in
> the CMI Litigation….took steps to make prospective purchasers
> aware of the CMI Litigation and of the fact that a purchaser of the
> [Whistler] radar division would be ***liable*** for Whistler's past
> infringement of the patent at issue.

*National Bank of Canada v. Hale & Dorr, LLP*, 17 Mass.L.Rptr. No. 29,681 at 682

(MA 2004) (emphasis added). (SER 27.) In the present case, Mr. Fleming waited

until the District Court ruled that Escort infringed his patents before notifying the other infringers.  (SER 27, 49-51, 124-181.)  In the CMI Litigation, Escort did not wait for an infringement ruling—Escort stated that purchasers of Whistler's assets "would be liable" for infringement before any court had ruled Whistler was an infringer.  (SER 27.)

As shown by the Patent Statute, the Federal Circuit, and Escort's own actions, being "liable" as an infringer accurately describes anyone who sells an infringing product, exactly as Mr. Fleming described in his letters to the re-sellers of Escort's infringing products.  (SER 27-28, 49-51.)  Moreover, as shown by the Patent Statute and both Escort's and the Federal Circuit's vernacular, the fact that Escort may have had defenses under some other provision of the Patent Statute does nothing to extinguish a patent infringer's "liability" under 35 U.S.C. § 271 for selling infringing products.  (SER 27-28.)

Last, Escort complained that Mr. Fleming's February 6, 2012 letter should not have indicated Escort "was purchased in a bankruptcy estate auction in 2005[1]." (SER 28, 49-51.)  The footnote was to http://falconheadcapital.com/page/news/53, which is a link to a press release from Escort's former holding company (Falconhead Capital) saying that "Falconhead recently won an auction for Escort" in 2005.  (SER 28, 49-51, 57-59.)  Other press clippings also show both Escort and Beltronics experienced a bankruptcy.  (SER 28, 60-63) ("Escort Inc. is proving

there's life after bankruptcy…Three years ago, Escort acquired rival Beltronics…that was *also* going through bankruptcy reorganization.") (emphasis added).)  Escort never explained then, nor does it explain now, how its assets were auctioned off outside the context of bankruptcy or how the press could have been repeatedly mistaken about its bankruptcy status.  (SER 28.)

On Sunday, February 12, 2012, six days after sending his letter, Mr. Fleming received Escort's present lawsuit on the doorstep of his home in Boise.  (SER 28, 64-65.)  The next day, Mr. Fleming sent a second letter to the same people he sent his first letter to.  (*Id.*)  That letter addressed each of Escort's complaints about Mr. Fleming's first letter, namely Mr. Fleming's use of "liable" and the issue of Escort's "bankruptcy".  (SER 28.)  Mr. Fleming's second letter explained that his use of "liable" was in the context of, and used the exact same way as, 35 U.S.C. § 271, which he had cited in connection with his reference to "liable" in his first letter.  (*Id.*)  Regarding Escort's "bankruptcy", Mr. Fleming noted that Escort had claimed in its present lawsuit that it never went through bankruptcy, that Mr. Fleming took Escort at its word, that he retracted his use of the word "bankruptcy", and that he instead maintained that Escort is a company "that Falconhead Capital won at an auction in 2005", exactly as Falconhead described in its press release. (SER 28-29.)

## C.   The Second Fleming v. Escort Case

Unable to communicate his patent rights to infringers without Escort suing him for such communications, Mr. Fleming did the only thing he could at that point to ensure his patent rights were not trampled or that he was not further subjected to additional, retaliatory suits by Escort—he sued Escort's re-sellers seven days later in the same forum (the District of Idaho) he had sued Escort and Escort had sued him.   (ER 21-32.)   That case currently is pending trial. Nevertheless, Escort has incorrectly argued in its Opening Brief (pp. 5-7, 9-10) that the first Fleming v. Escort case exonerated Escort's re-sellers of liability for their infringement of Mr. Fleming's patents.   The District Court actually ruled that certain of the re-sellers' infringement had been exonerated by Escort's escrow of the jury award in the parties' first case, but that the re-sellers' liability for their willful infringement of the two patents Escort was found to infringe (in the parties' first case) was still at issue, as is their liability for infringement of a third patent asserted only in the parties' second case.  (SER 70-84.)

## V.   SUMMARY OF THE ARGUMENT

If the Court concludes that it has jurisdiction to hear this case, and decides to hear Escort's new arguments never presented to (or ruled on by) the District Court, Mr. Fleming and PVFD respectfully request an order affirming the District Court's dismissal of Escort's state law causes of action.  Escort's complaint shows that all

of Escort's claims arise from a single cease-and-desist letter PVFD sent (while representing Mr. Fleming) in connection with a then-pending patent infringement litigation and in anticipation of the parties' present case. Because such communications are protected by the Idaho litigation privilege, all of plaintiffs' claims are barred as a matter of law.

## VI.  ARGUMENT

### A.  The Applicable Standard Of Review

The District Court's dismissal of Escort's complaint receives de novo appellate review. *Polich v. Burlington Northern, Inc.,* 942 F.2d 1467, 1472 (9th Cir. 1991); *Dumas v. Kipp,* 90 F.3d 386, 389 (9th Cir. 1996). However, appellate courts are not courts of first impression, and arguments not presented to the district court will not be considered on appeal since doing so destroys the appellate process by rendering the district court irrelevant. *Whittaker Corp. v. Execuair Corp.,* 953 F.2d 510, 515 (9th Cir. 1992); *Dodd v. Hood River County,* 59 F.3d 852, 863 (9th Cir. 1995); *Golden Bridge Tech., Inc. v. Nokia, Inc.,* 527 F.3d 1318, 1321-23 (Fed. Cir. 2008).

### B.  Legal Background Regarding Fed. R. Civ. P. 12(b)(6)

The U.S. Supreme Court has explained how a district court (and this Court on a de novo review) should analyze a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) ("To survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"). Providing too much detail in the complaint may also be fatal to a plaintiff. As in this case, dismissal is appropriate when the plaintiff has included sufficient allegations disclosing an absolute defense or bar to recovery. *See Weisbuch v. County of L.A.,* 119 F.3d 778, 783, n. 1 (9th Cir. 1997).

### C.   Legal Background Regarding The Idaho Litigation Privilege

Ignoring the retaliatory nature of this case against Mr. Fleming and his lawyer, one thing stands out: the sole basis for all of Escort's claims is one letter Mr. Fleming directed his lawyer to send on February 6, 2012 in connection with his on-going litigation with Escort and as an effort to enforce his patents against infringers thereof. While the U.S. Supreme Court has acknowledged the legitimacy of such letters, *Virtue,* 227 U.S. at 37-38 (1913) ("Patents would be of little value if infringers of them could not be notified of the consequences of infringement, or proceeded against in the courts."), Escort's lawsuit raises a more insidious issue. Escort's lawsuit indicts a lawyer's duty to zealously represent his client, deters parties from seeking out-of-court resolutions of their disputes, and seeks to create a never-ending chain of new lawsuits arising from counsels' litigation activities in prior lawsuits. This is not the first such case and, as shown below, the District Court correctly dismissed it like other courts before it.

More than a century of British and American common law apply the litigation privilege to protect lawyers (and their clients) from suits arising out of client representations. As the Idaho Supreme Court recently stated when reviewing (and confirming) the historical nature of the litigation privilege:

> This privilege is predicated on the long-established principle that the efficient pursuit of justice requires that attorneys and litigants must be permitted to speak and write freely in the course of litigation without the fear of reprisal through a civil suit for defamation or libel.

*Taylor v. McNichols,* 149 Idaho 826, 243 P.3d 642, 652 (Idaho 2010) (affirming dismissal of all claims under Idaho Rule 12(b)(6)). Against this backdrop, *Taylor* expressly extended the litigation privilege to make it "absolute".

> Therefore, this Court holds that, as a general rule, where an attorney is sued by the current or former adversary of his client, as a result of actions or communications that the attorney has taken or made in the course of his representation of his client in the course of litigation, the action is presumed to be barred by the litigation privilege.

*Id*. at 657; *see also id.* at 653.

Notably, there is no "good faith" exception to the Idaho litigation privilege since it applies even if the attorney or client would have been liable had the communication or action taken place outside the context of the client representation. *Id*. at 657-658 ("It is true that such an approach means there is risk that a wronged party may be denied civil relief under the law, but as Judge Learned Hand stated, in justifying absolute immunity….*it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject*

17

*those who try to do their duty to the constant dread of retaliation.*") (emphasis original); *see also id.* at 654 ("Thus, an attorney's conduct, even if frivolous or without merit, is not independently actionable if the conduct is part of the discharge of the lawyer's duties in representing his or her client.").[1]  Also, while the only complained-of activity in this case arises from PVFD's February 6, 2012 letter, *Taylor* confirmed that the litigation privilege also extends to Mr. Fleming as PVFD's client.  *Id.* at 653 (citing *Rainier's Dairies v. Raritan Valley Farms*, 19 N.J. 552, 117 A.2d 889, 892 (1955) (privilege extends to clients)).

### D.    Escort's Complaint Maps Directly To The Idaho Litigation Privilege

The Idaho litigation privilege bars all of Escort's state law causes of action against both PVFD and Mr. Fleming since, as shown below, Escort's complaint admits each element of the privilege.

Application of the privilege first requires that "an attorney is sued by the current or former adversary of his client".  *Taylor,* 243 P.3d at 657.  Here, it is undisputed that PVFD has been sued by Escort, who is the current adversary of PVFD's client, Mr. Fleming.  (ER 34-35.)  The privilege next requires that the

---

[1] Note also that in another case the District Court applied the Idaho litigation privilege as it existed prior to *Taylor* and explained that the privilege did not include a "good faith" requirement.  *Blaine Larsen Processing, Inc. v. Hapco Farms, Inc.,* Case No. 97-212-E-BLW, 1999 U.S. Dist. LEXIS 23520 (D. Idaho June 16, 1999) (noting that the privilege applies "regardless of whether the statements were made maliciously and with knowledge of their falsity").

present suit arise from "actions or communications that the attorney has taken or made in the course of his representation of his client in the course of litigation". *Taylor,* 243 P.3d at 657. Escort's complaint admits this since the premise of Escort's claims solely arise from the February 6, 2012 letter PVFD sent (while representing Mr. Fleming) during the course of the parties' then-pending patent litigation, which Escort's complaint refers to as "the Idaho Patent Infringement Action". (ER 5-6, 33-50 (Complaint at ¶¶ 4-5, ¶¶ 8-12; ¶¶ 25-40; ¶ 45 ("Defendants so communicated and published the statements...in connection with the Idaho Patent Infringement Action."); ¶ 62 (same); ¶ 75 (same)); SER 49-51.)

That ends the analysis and it really is that straightforward. Indeed, the fact that Escort's Opening Brief ignored this simple application of the undisputed facts to the elements of the Idaho litigation privilege is a conspicuous acknowledgement that the District Court's decision should be affirmed on this basis alone.

### E. Escort's New Arguments Miss The Point By Erring Factually, Logically, And Legally

Escort tortures the District Court's decision trying to trump up an error. In doing so, Escort impermissibly raises arguments it never raised to the District Court, which are additionally flawed as factually, logically, and legally incorrect.

### 1. Escort Fails to Explain Why the Facts as Pled Do Not Map Directly to the Litigation Privilege

Escort conspicuously fails to explain why the facts as pled in its complaint do not map directly to the Idaho litigation privilege.  As explained above, the elements of the litigation privilege are straightforward and the few facts necessary to its application are not in dispute since they come straight from Escort's complaint.  *Supra* at pp. 18-19.  *Weisbuch,* 119 F.3d at 783, n. 1 (9th Cir. 1997) (dismissal may be appropriate when the plaintiff has included sufficient allegations disclosing some absolute defense or bar to recovery).  That ends the analysis and the District Court's decision can be affirmed on that basis alone.

The District Court's decision also can be independently confirmed because "in the course of litigation" includes pre-litigation communications, and it is undisputed that the February 6, 2012 cease and desist letter also was sent in connection with, and just prior to, the parties' present litigation that ensued seven days later.  (ER 11-12, Order citing *Richeson v. Kessler,* 255 P.2d 707, 709 (Idaho 1953), *Malmin v. Engler,* 864 P.2d 179, 183 (Ct. App. 1993), and *Taylor v. McNichols*, 243 P.3d 642, 653 (Idaho 2010).)

### 2. Escort's Argument that its Complaint Need Not Anticipate the Idaho Litigation Privilege Errs Legally, Factually, and Logically

Escort argued to the District Court that the Idaho litigation privilege applies only to communications made during litigation and not to pre-litigation

communications. (ER 11; SER 1-22.) Escort made that argument because it thought it could convince the District Court that Mr. Fleming's notice of infringement letter was merely a pre-litigation communication, *i.e.,* one made only prior to (and in connection with) the parties' present case and not one made in connection with the parties' then-pending first case. (*Id.*) The District Court disagreed and so thoroughly held otherwise that Escort has abandoned the argument in favor of a new one. Escort now argues the litigation privilege applies to pre-litigation communications, but only if the communication "relates to litigation contemplated in good faith and under serious consideration". (Escort Opening Br. at pp. 15-22.)

As an initial matter, this argument was not presented to the District Court and, therefore, is improper for consideration on appeal. (SER 1-22.) *Whittaker,* 953 F.2d 510, 515 (9th Cir. 1992); *Dodd,* 59 F.3d 852, 863 (9th Cir. 1995); *Golden Bridge,* 527 F.3d 1318, 1321-23 (Fed. Cir. 2008). This Court is not a court of first impression and, as the foregoing precedent establishes, new arguments on appeal are improper because they destroy to appellate process by rending the district court irrelevant.

Even if the Court were to consider Escort's new argument, it is easily disposed of. While some states' litigation privilege requires a "litigation contemplated in good faith and under serious consideration element", the Idaho

litigation privilege does not.  The Idaho litigation privilege applies to "<u>statements</u> <u>made prior to, or in preparation of, a judicial proceeding</u>" so long as the statements are "<u>made in the course of [the attorney's] representation</u>".  *Taylor v. McNichols,* 243 P.3d at 653, 657 (Idaho 2010); *Richeson v. Kessler,* 255 P.2d 707, 709 (Idaho 1953); *Malmin v. Engler,* 864 P.2d 179, 183 (Ct. App. 1993).  It is undisputed that the PVFD letter was sent in the course of its representation of Mr. Fleming.  (ER 5-6, 33-50 (Complaint at ¶¶ 4-5, ¶¶ 8-12; ¶¶ 25-40; ¶ 45 ("Defendants so communicated and published the statements...in connection with the Idaho Patent Infringement Action."); ¶ 62 (same); ¶ 75 (same)); SER 49-51.)  Thus, Escort's new argument fails.

Escort's new argument also is a red herring.  While Escort seeks to focus only on whether the litigation privilege applies to certain pre-litigation communications, it fails to address the more critical and devastating fact that Escort's complaint admits the letter was sent in connection with the parties' then-pending first case.  (ER 5-6, 33-50 (Complaint at ¶¶ 4-5, ¶¶ 8-12; ¶¶ 25-40; ¶ 45 ("Defendants so communicated and published the statements...in connection with the Idaho Patent Infringement Action."); ¶ 62 (same); ¶ 75 (same)); SER 49-51.)  As such, the letter admittedly was sent in connection with the parties' *existing* litigation, thereby irrefutably invoking the litigation privilege and simultaneously

rendering irrelevant the straw-man issue of whether it was a pre-litigation communication and/or whether it contemplated litigation in good faith.

Escort next argues "*Fleming II* was not pending at the time Escort filed this lawsuit, and therefore Escort could not have pled that Defendants-Appellees did not contemplate in good faith a judicial proceeding [when they sent the notice of infringement letter]". (Escort Opening Br. at pp. 16-20.) This is another new argument that Escort never presented to the District Court and, therefore, should be ignored on appeal. (SER 1-22.) *Whittaker,* 953 F.2d at 515; *Dodd,* 59 F.3d at 863; *Golden Bridge,* 527 F.3d at 1321-23. If it is considered, it is easily dismissed for two independent reasons.

First, the fact that *Fleming II* was filed after the notice of infringement letter has nothing to do with whether its filing was contemplated in good faith at the time the letter was sent. In other words, Mr. Fleming's good faith intent to bring suit (at the time he sent his letter) does not depend on whether he ultimately brought the suit. *See Aronson v. Kinsella,* 58 Cal. App. 4th 254, 68 Cal. Rptr. 2d 305, 308-09 and 316 (1997). Thus, Escort fails in attempting to draw a logical inconsistency in the District Court's application of the Idaho litigation privilege.

Second, as discussed above, the Idaho litigation privilege does not have a "good faith" element. Thus, Escort's pleading (or lack thereof) relating to good faith is irrelevant. The District Court properly held that the "[l]etter, as a

communication 'made preliminary to a proposed judicial proceeding,' was made within the course of litigation" and was within the scope of the attorney's employment. (ER 10-15.) Under Idaho law, that is all that is required.

Finally, Escort requests that this Court modify the Idaho litigation privilege (as announced by the Idaho Supreme Court in *Taylor*) to include pre-litigation communications only if they "relate to litigation that is contemplated in good faith and under serious consideration". (Opening Br. at pp. 15-16.) This is another new argument that Escort never presented to the District Court (SER 1-22.) and, therefore, should be ignored on appeal. *Whittaker,* 953 F.2d at 515; *Dodd,* 59 F.3d at 863; *Golden Bridge,* 527 F.3d at 1321-23. If it is considered, it is easily dismissed as inconsistent with the Idaho Supreme Court's articulation of the Idaho litigation privilege.

Specifically, the Idaho Supreme Court has rejected Escort's request to qualify (with a good faith requirement) the type of communications immunized by the Idaho litigation privilege. In *Taylor*, the Idaho Supreme Court acknowledged that its prior holding in *Richeson v. Kessler,* 255 P.2d 707 (Idaho 1953) disposed of any "good faith" limitation on the Idaho litigation privilege. The *Taylor* Court noted:

> The *Richeson* Court held that "[w]ith certain exceptions, unimportant here, defamatory matter published in the due course of a judicial proceeding, having some reasonable relation to the cause, is absolutely privileged and will not support a civil action for defamation

although made maliciously and with knowledge of its falsity." 73
Idaho at 551-52, 255 P.2d at 709.

243 P.3d 642, 653 (Idaho 2010). The *Taylor* Court then approved a more recent

articulation of the Idaho litigation privilege made in *Malmin v. Engler* as follows:

> More recently, in 1993, the Idaho Court of Appeals applied the
> privilege in *Malmin v. Engler*, wherein the court noted that this
> privilege "is based upon a public policy of securing to attorneys and
> officers of the court the utmost freedom in their efforts to secure
> justice for their clients." 124 Idaho 733, 735, 864 P.2d 179, 181
> (Ct.App.1993) (quoting Restatement (Second) of Torts §586 cmt. a
> (1965)). <u>The court emphasized that statements made prior to, or in
> preparation of, a judicial proceeding are also protected under the
> privilege.</u> *Id.* at 737, 864 P.2d at 184.

*Id.* (emphasis added). Notably, the court placed no limitation on the type of pre-

litigation communications permissible under the Idaho litigation privilege and

certainly not the limitation Escort proposes. The *Taylor* Court then went on to

"expand" the privilege to encompass conduct and statements that occur during the

course of litigation and to causes of action beyond defamation and libel. *Id.*

In doing so, the *Taylor* Court repeatedly refrained from limiting pre-

litigation communications only to those "made in good faith and in serious

contemplation of litigation", as Escort demands. Instead, after canvassing other

jurisdictions' litigation privileges, the *Taylor* Court summarized its holding:

> For Idaho, the litigation privilege is an absolute privilege, which only
> applies when a specific condition precedent is met, namely, that an
> attorney is acting within the scope of his employment, and not solely
> for his personal interests.

25

> It is presumed that an attorney who is acting or communicating in relation to his representation of a client is acting on behalf of that client and for that client's interests. [Citations omitted.] To find otherwise would invite attorneys to divide their interest between advocating for their client and protecting themselves from a retributive suit. Allowing such a divided interest would run contrary to the Idaho Rules of Professional Conduct, because, as noted by the district court judge below:

> [w]hile attorneys must not knowingly counsel or assist a client in committing a crime or fraud, Idaho's Rules of Professional Conduct require an attorney to pursue matters on behalf of a client despite opposition, obstruction or personal inconvenience to the attorney, and require an attorney to take whatever lawful and ethical measures are required to vindicate a client's cause or endeavor.

*Id.* at 657.

In explaining its holding, the *Taylor* Court again confirmed that it was rejecting any "good faith" exception to its privilege. *Id.* at 657-658 ("It is true that such an approach means there is risk that a wronged party may be denied civil relief under the law, but as Judge Learned Hand stated, in justifying absolute immunity….*it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation*.") (emphasis original).[2]   Accordingly, the Idaho

---

[2] The District Court in another case applied the Idaho litigation privilege as it existed prior to *Taylor*. *Blaine Larsen Processing, Inc. v. Hapco Farms, Inc.,* Case No. 97-212-E-BLW, 1999 U.S. Dist. LEXIS 23520 (D. Idaho June 16, 1999) (noting that the privilege applies "regardless of whether the statements were made maliciously and with knowledge of their falsity").

Supreme Court has rejected Escort's present bid to have this Court judicially amend the Idaho litigation privilege.

### 3. Escort's Argument that Federal Patent Law Preempts the Idaho Litigation Privilege Errs as a Matter of Law

Escort argues for the first time on appeal that federal patent law preempts the Idaho litigation privilege. (Escort Opening Br. at pp. 22-25.) Aside from unwittingly acknowledging that this appeal belongs at the Federal Circuit (*see* 28 U.S.C. §§ 1295 and 1338), Escort mischaracterizes the Federal Circuit's precedent, conflates the federal policy of protecting the sending of notice of infringement letters, and fails to appreciate that its exact argument has been judicially rejected.

As an initial matter, Escort did not raise its preemption argument to the District Court (SER 1-22), thereby rendering it unavailable on appeal. *Whittaker,* 953 F.2d at 515; *Dodd,* 59 F.3d at 863; *Golden Bridge,* 527 F.3d at 1321-23. To the extent the Court addresses Escort's new argument, it is easily distinguishable.

Federal law preempts state law only when there is a conflict between the two such that the state law prohibits something allowed under federal law. *Mikohn Gaming Corp. v. Acres Gaming, Inc.,* 165 F3d. 891, 896 (Fed. Cir. 1998). For example, Federal Circuit precedent holds that the propriety of sending a notice of infringement letter must be reviewed under a good faith standard, and where state tort law allows liability on a lesser standard, the federal law's good faith standard stands supreme. *Id* at 895-97; *see also Hunter Douglas, Inc. v. Harmonic Design,*

*Inc.,* 153 F.3d 1318, 1335 (Fed. Cir. 1998) (holding that federal patent law preempts state tort law concerning notice given by patent holders only when that state tort law *weakens* patent holder rights); *Dominant Semiconductor,* 524 F.3d 1254, 1260 (Fed. Cir. 2008) ("'bad faith must be alleged and ultimately proven, even if bad faith is not otherwise an element of the [state] tort claim.'").  The point is that state law cannot be used to lessen/weaken the federal policy encouraging the distribution of notice of infringement letters.

In this case, there is no conflict between the Idaho litigation privilege and federal patent law because the Idaho litigation privilege enhances (not weakens) the federal policy of requiring patentees to put infringers on notice of their infringement.   As the District of New Jersey held in identical circumstances involving a party's claim that federal patent law preempts the state's litigation privilege as it applies to notice of infringement letters:

> There is no such conflict [between federal patent law and the litigation privilege] in this case…[P]atent holders have an undisputed right to notify the trade that their patent rights are being infringed and that they intend to protect those rights.  [Citations omitted.]  Indeed, notice is even a perquisite to obtaining damages for patent infringement.  *See* 35 U.S.C. § 287 (1994).  This is the federal interest the Federal Circuit sought to protect in *Mikohn Gaming Corp.*  Far from emasculating the protections afforded patent holders, the application of New Jersey's "absolute litigation privilege" only serves this interest, for even a showing of bad faith by a state tort law claimant will not subject a notice-giver to liability under the privilege.  If anything, New Jersey's litigation privilege enhances patent-holder rights.

*Waterloov Gutter Protection v. Absolute Gutter,* 64 F.Supp.2d 398, 413-414 (D. N.J. 2009). Thus, contrary to Escort's argument, there is no conflict between federal patent law and the Idaho litigation privilege since applying that privilege only enhances (not weakens or conflicts with) the federal policy of requiring patentees to send notice of infringement letters. With no conflict, Escort's preemption argument falls apart, just as it did in *Waterloov*.

### 4. Escort's Argument that the Notice of Infringement Letter is Not Related to the Parties' Litigations is Specious

Escort argues the Idaho litigation privilege does not apply because Mr. Fleming's cease and desist letter was not related to the parties' present case. (Opening Br. at pp. 25-30.) Escort's current, multi-page argument bears no relation to the single, conclusory sentence (without legal citation) tacked onto the end of a separate argument in its brief to the District Court. (SER 10.) Not surprisingly, the District Court did not address this single sentence in Escort's brief because it was not raised "sufficiently for the trial court to rule on it." *Whittaker,* 953 F.2d at 515. Thus, Escort's new argument is unavailable on appeal. *Id*; *Dodd,* 59 F.3d 852, 863 (9th Cir. 1995); *Golden Bridge,* 527 F.3d 1318, 1321-23 (Fed. Cir. 2008). To the extent the Court addresses Escort's new argument, it is easily distinguishable.

Escort does not argue the entire letter is unrelated to the parties' present case, but only the part of the letter addressing the re-seller's liability if Escort was

unable to pay Mr. Fleming his jury award. That, respectfully, makes no sense. As Mr. Fleming was careful to explain to the re-sellers, the law does not permit him to make a double recovery, *i.e.,* if Mr. Fleming recovers his damages associated with Escort's sale of an infringing product, he is not permitted to recover again for a reseller's subsequent sale of the same product. (SER 49-51.) But since the law recognizes Escort and its re-sellers as joint tortfeasors having joint and several liability, Mr. Fleming is entitled to look to the resellers to satisfy his judgment if Escort is financially unable to pay the damage award. *Shockley,* 248 F.3d at 1364. As such, contrary to Escort's argument, Escort's financial viability is directly relevant to Mr. Fleming's case against Escort and the re-sellers, which is why he explained all of that in his notice letter.

## VII. CONCLUSION

For the foregoing reasons, Mr. Fleming and PVFD respectfully request that the Court affirm the District Court's judgment.

October 15, 2013    Respectfully Submitted

       /s/ Michael S. Dowler
       Michael S. Dowler
       Park Vaughan Fleming & Dowler, LLP
       5847 San Felipe, Suite 1700
       Houston, TX 77057
       Telephone: 713-821-1540

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify, pursuant to Fed. R. App. Proc. 32(a)(7)(C) and Circuit Rule 32-1, that the foregoing Appellees' Opening Brief complies with the type volume limitation set forth in Rule 32(a)(7).  The foregoing brief (excluding the corporate disclosure statement, table of contents and index of authorities, but including footnotes and headings) contains 7403 words on 646 lines.  In preparing this certificate, I relied on the word count generated by Microsoft Word.


October 15, 2013                          /s/  Michael S. Dowler
                                          Michael S. Dowler

                                          Park Vaughan Fleming & Dowler, LLP
                                          5847 San Felipe, Suite 1700
                                          Houston, TX 77057
                                          Telephone: 713-821-1540

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 15th day of October 2013, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit, using the appellate CM/ECF system, which sent a Notice of Electronic Filing to the following persons.  To the extent any of the foregoing was filed under seal, I have also concurrently served the following persons by email as indicated below.

Terry C. Copple
DAVISON, COPPLE, COPPLE & COPPLE, LLP
Chase Capitol Plaza, Suite 600
199 North Capitol Boulevard
P.O. Box 1583
Boise, ID 83701
tc@davisoncopple.com

Brett A. Schatz
Gregory F. Ahrens
WOOD, HERRON & EVANS, L.L.P.
441 Vine Street
2700 Carew Tower
Cincinnati, OH 45202
bschatz@whepatent.com
gahrens@whepatent.com

/s/  Michael S. Dowler
Michael S. Dowler

Park Vaughan Fleming & Dowler, LLP
5847 San Felipe, Suite 1700
Houston, TX 77057
Telephone: 713-821-1540